# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| U.S. SMALL BUSINESS ADMINISTRATION, AS RECEIVER FOR CARDINAL GROWTH, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. |
| JOSEPH McINERNEY, | ) ) | |
| Defendant. | ) ) ) ) ) | *Assigned to:* |

## COMPLAINT

The Plaintiff, the U. S. Small Business Administration (the "SBA"), as Receiver for Cardinal Growth, L.P. (the "Receiver"), by the undersigned attorneys, for its Complaint against the Defendant, Joseph McInerney, respectfully alleges and states as follows:

### Nature of Action

1.      The Receiver brings this action against the Defendant, Joseph McInerney, for breach of contract based upon Defendant's failure to satisfy his obligations to make capital contributions to Cardinal Growth, L.P. ("Cardinal Growth"), under the Limited Partnership Agreement ("LPA") executed by Cardinal Growth and the Defendant, Joseph McInerney.

### Parties

2.      The SBA was appointed Receiver for Cardinal Growth by Order of this Court, dated June 16, 2011 (the "Receivership Order"), in the case entitled, *United States of America v. Cardinal Growth, L.P.*, Civil Action No. 1:11-cv-04071 (the "Receivership Case"), pending before the Hon. Ruben Castillo, for the purpose of, among other things, pursuing claims and

1

causes of action available to Cardinal Growth.  The Receivership Order provides, in pertinent

part, as follows:

> The Receiver shall have all powers, authorities, rights and privileges
> heretofore possessed by the officers, directors, managers and general and
> limited partners of Cardinal under applicable state and federal law, by the
> Articles of Limited Partnership and By-Laws of said limited partnership, in
> addition to all powers and authority of a receiver at equity, and all powers
> and authority conferred upon the Receiver by the provisions of 15 U.S.C. §
> 687c and 28 U.S.C. § 754. . . .  The Receiver shall assume and control the
> operation of Cardinal and shall pursue and preserve all of its claims.

Receivership Order, ¶ 2.  A true and correct copy of the Receivership Order is attached hereto as

**Exhibit 1**, which is incorporated herein by reference.

3.      The Receivership Order contains a blanket stay in Paragraph 7.  By an order

entered June 30, 2016, in the Receivership Case, the stay was lifted for limited purpose of

allowing the Receiver to file and pursue the instant action.  A true and correct copy of that order

is attached as **Exhibit 2**.

4.      The Receiver maintains its principal office at 1100 G. St. NW, 11th Floor

Washington, D.C. 20005.

5.      Defendant Joseph McInerney ("McInerney") is a resident and citizen of the State

of Illinois.

6.      Cardinal Growth is a limited partnership formed in and under the laws of the State

of Delaware on or about February 12, 1999, under the name "Cardinal Capital, L.P." (entity file

no. 3000716).  On or about October 24, 2000, Cardinal Capital, L.P., changed its name to

Cardinal Growth, L.P.  At all times relevant hereto, up to and until the entry of the Consent

Order of Receivership on June 16, 2011, Cardinal Growth, L.P., maintained its principal office in

Chicago, Illinois.

7.      On or about July 7, 2000, SBA licensed Cardinal Growth as a small business

investment company ("SBIC") under the Small Business Investment Act of 1958, as amended, 15 U.S.C. § 661, et seq. (the "Act").

8.      Defendant McInerney is one of the original principals of Cardinal Growth who sought and obtained licensure of Cardinal Growth as an SBIC.

9.      Under the Act and applicable regulations (collectively, the "SBIC Act"), Cardinal Growth was organized solely for the purpose of performing the functions and conducting the activities contemplated under the Act and was prohibited in engaging in any other activities, *see e.g.*, 13 C.F.R. §§ 107.160 and 500.

10.     Cardinal Growth, LLC ("CGLLC"), is a limited liability company formed in and under the laws of the State of Delaware on or about February 12, 1999, under the name "Cardinal Capital, LLC" (entity file no. 3006645). On or about December 14, 2000, Cardinal Capital, LLC, changed its name to Cardinal Growth, LLC.  At all times relevant hereto, up to and until the entry of the Consent Order of Receivership on June 16, 2011, CGLLC was the General Partner of Cardinal Growth.

11.     As the general partner of Cardinal Growth, CGLLC was organized solely for the purpose of being the general partner of Cardinal Growth as an SBIC as required by 13 C.F.R. § 107.160(b).

12.     At all times relevant hereto, the manager of CGLLC was Cardinal Growth Corporation ("CGC"). On or about February 24, 1999, CGC was formed, under the name "Cardinal Capital Corporation," as a corporation in and under the laws of the State of Illinois (entity file no. 60364435). On or about December 15, 2000, Cardinal Capital Corporation changed its name to Cardinal Growth Corporation.

**Jurisdiction and Venue**

13.     This Court has subject matter jurisdiction of this action pursuant to the

-3-

Receivership Order under 15 U.S.C. § 687c, by the Court's general equitable powers, and under 28 U.S.C. §§ 754 and 1367, as this action is ancillary to the Receivership Case referenced in Paragraph 2 above.

14.     Venue of this action is proper in the Northern District of Illinois, pursuant to 28 U.S.C. §§ 754 and 1391(b)(2), as this proceeding is ancillary to the receivership case referenced in Paragraph 2 above, and a substantial portion of the events and omissions giving rise to the claim occurred in this district.

<u>**Background**</u>

15.     A true and correct copy of the LPA is attached hereto (with certain signature pages excerpted therefrom), as **Exhibit 3**, which is incorporated herein by reference.

16.     The LPA provides that it is "dated and effective as of September 27, 1999" and is among and between CGLLC (formerly named Cardinal Capital, LLC), certain Private Limited Partners, and a Strategic Limited Partner, as those terms are defined in Section 1.01 of the LPA. SBA later provided federal funding to Cardinal Growth and obtained an interest of a Preferred Limited Partner, as that term is defined in the LPA.

17.     Section 2.01 provides in pertinent part that Cardinal Growth is organized solely for the purpose of operating as an SBIC.

18.     Section 10.01 of the LPA allows for the assignability of Limited Partnership Interests under certain conditions as specified in that section.

19.     Section 1.05(a) of the LPA provides,

No person may be admitted as a General Partner or Private Limited Partner without subscribing and delivering to the Partnership a counterpart of this Agreement, or other written instrument, which sets forth:
(i)      the name and address of the Partner,

(ii)     the Commitment of the Partner, and

       (iii)    the agreement of the Partner to be bound by the terms of this Agreement.

20.     Section 1.01 of the LPA defines "Commitments" as "the capital contributions to the Partnership that the Preferred Limited Partners have made and the other Partners have made or are obligated to make to the Partnership. The amounts and terms of the Commitments of the General Partner, the Private Limited Partners, and the Preferred Limited Partners will be as stated in this Agreement."

21.     Section 5.01(a) of the LPA governs the Private Limited Partner's capital contributions. It provides, in pertinent part, "The Private Limited Partners and the General Partner commit to make capital contributions to the Partnership in the amounts set forth by their respective names on Exhibit 'A' attached to this Agreement."

22.     Section 5.02(b) of the LPA provides, in relevant part:

> Each Private Limited Partner that qualifies as an Institutional Investor shall not be obligated to make any initial capital contribution to the Partnership. To the extent that any such Private Limited Partner does not make any initial capital contribution, or makes a capital contribution in an amount less than the full amount of such Private Limited Partner's Commitment, such Private Limited Partner shall pay the remaining balance of his Commitments in cash, in such amounts and at such times as shall be determined by the General Partner in its sole discretion, and each payment shall be made upon not less than twenty (20) days' prior notice from the General Partner, which notice shall specify the date such payment shall be due and the percentage of the Private Limited Partners' Commitments then due. Such Private Limited Partners shall not be obligated to provide an irrevocable credit to secure their obligation to contribute the unpaid portion of their Commitments.

23.     Section 5.02(c) of the LPA provides, in relevant part:

> Each Private Limited Partner that does not qualify as an Institutional Investor shall be obligated to pay the full amount of its capital commitment as its initial capital contribution. However, such individual Private Limited Partners may elect to fulfill this obligation by providing an irrevocable letter of credit equal to the unpaid portion of its Contribution and such other information as the SBA may require. Subsequent to the date of the initial capital contribution, such Private

Limited Partners who satisfy any portion of their obligation under this Section 5.02(c) with an irrevocable letter of credit shall pay the remaining balance of their commitments in cash, in such amounts and at such times as shall be determined by the General Partner in its sole discretion, and each payment shall be made upon not less than twenty (20) days' prior notice from the General Partner, which notice shall specify the date such payment shall be due and the percentage of the Private Limited Partner's commitment due.

24.     Section 5.06(b) of the LPA provides:

Notwithstanding any provision in this Agreement to the contrary (except as expressly provided in this Section 5.06(b)), if the Partnership is subject to restricted operations (as that term is used in the SBIC Act) and before the liquidation of the Partnership, SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions will not be subject to any conditions stated in this Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) before any specified date.

25.     Section 5.06(c) of the LPA provides, in pertinent part:

No Private Limited Partner or General Partner has any right to delay, reduce or offset any obligation to contribute capital to the Partnership called under this Section 5.06 by reason of any counterclaim or right to offset by the Partner or the Partnership against SBA or any Preferred Limited Partner.

26.     Section 5.05(b) of the LPA provides:

The Partnership shall not enter into any agreement (whether oral or written), release or settlement with any Partner or take any action under any provision of this Agreement, which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership, or commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation, and no such agreement, release, settlement or action taken under any provision of this Agreement shall be effective with respect to the Partnership or any such Partner, without the prior written (except as provided in Section 5.07(d)) consent of the SBA.

27.     Section 5.07(c) of the LPA provides:

Unless SBA has given its prior consent or the provisions of Section 5.07(d) have become applicable, the Partnership will not (i) take any action (including entering into any agreement (whether oral or written),

release or settlement with any Partner) which defers, reduces, or terminates the obligations of the Partner to make contributions to the capital of the Partnership, or (ii) commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation. Without the consent of SBA (including SBA's deemed consent under Section 5.07(d)) no such agreement, release, settlement or action taken will be effective with respect to the Partnership or any Partner.

28.     Section 5.11 of the LPA provides in relevant part:

In the event that any Private Limited Partner fails to make a contribution required under this Agreement within thirty (30) days after the date such contribution is due, then the General Partner may, in its sole discretion, elect to charge such Private Limited Partner interest at an annual rate equal to fifteen percent (15%) on the amount due from the date such amount became due until the earlier of (a) the date on which such payment is received by the Partnership or (b) the date of any notice given to such Private Limited Partner by the General Partner pursuant to Sections 5.13, 5.14 or 5.15.

29.     Cardinal Growth performed its own contractual duties owed to Defendant McInerney under the LPA.

30.     All conditions necessary to Cardinal Growth's rights to enforcement of the LPA have been satisfied or waived.

## COUNT I:
## BREACH OF CONTRACT
### (Defendant McInerney's personal capital commitment)

31.     The Receiver incorporates by reference Paragraphs 1 through 30 above, as though fully set forth herein.

32.     On or about January 5, 2000, Defendant McInerney entered into the LPA, by which he agreed to pay $750,000.00 (seven hundred fifty thousand) for a limited partnership interest in Cardinal Growth.

33.     Defendant McInerney committed to make a capital contribution to Cardinal Growth in the amount of $750,000.00 (seven hundred fifty thousand dollars) as set forth in

Exhibit "A" to the LPA.

34.     A true and correct copy of the Counterpart Signature Page to the LPA signed by Defendant McInerney and evidencing Defendant McInerney's commitment to make a capital contribution to Cardinal Growth in the amount of $750,000.00 (seven hundred fifty thousand dollars) is attached hereto as **Exhibit 4** (redacted to comply with FRCP 5.2), which is incorporated herein by reference.

35.     Cardinal Growth accepted Defendant McInerney's capital commitment, as evidenced by **Exhibit 5**.

36.     With the execution of the Counterpart Signature Page and its acceptance by Cardinal Growth, Defendant McInerney became a Private Limited Partner of Cardinal Growth.

37.     CGC held a limited partnership interest through a capital commitment to Cardinal Growth up until 2006.

38.     On or about August 1, 2006, Defendant McInerney and CGC requested approval from Cardinal Growth for CGC to assign its capital commitment to Defendant McInerney.

39.     On or about August 1, 2006, Cardinal Growth approved the assignment of CGC's capital commitment to Defendant McInerney, and Defendant McInerney accepted the assignment.

40.     At the time of the assignment of CGC's capital commitment to Defendant McInerney, CGC was a Private Limited Partner with a $400,000 capital commitment, of which $100,000 was unfunded and had not been paid to Cardinal Growth.

41.     **Exhibits 6, 7** and **8** are true and correct copies of documents, respectively, executed by Defendant McInerney evidencing the assignment; his agreement to accept the assignment; and Cardinal Growth's approval of the assignment from CGC to Defendant McInerney of CGC's capital commitment of $400,000, of which $100,000 was unpaid. (Exhibit

6 is redacted to comply with FRCP 5.2.)

42.     As a result of the assignment of CGC's capital commitment to Defendant McInerney, the amount Defendant McInerney owed to Cardinal Growth as part of his own unfunded capital commitment increased by an additional $100,000.

43.     After becoming a Private Limited Partner of Cardinal Growth, Defendant McInerney accepted all burdens and benefits associated with its status as a Private Limited Partner.  Defendant McInerney was obligated to meet and did meet some, though not all, of the capital calls on its capital commitment.  Prior to entry of the Receivership Order, Defendant McInerney was entitled to receive and did receive distributive returns on his capital commitment.

44.     The books and records of Cardinal Growth reflect the amount that Private Limited Partners actually paid toward their capital contribution commitments.

45.     The books and records of Cardinal Growth reveal that Defendant McInerney has not paid the full capital contribution he agreed to make to Cardinal Growth.

46.     The books and records of Cardinal Growth show that, as to Cardinal Growth, Defendant McInerney has an unfunded personal capital commitment amount of $245,000.00 (two hundred fifty-five thousand dollars).

47.     On or about February 3, 2011, SBA notified Cardinal Growth that SBA had determined that Cardinal Growth had violated a number of applicable regulations and that SBA was therefore taking measures to protect its rights and remedies under 13 C.F.R. § 107.1820.  Among such measures, SBA, in exercise of its regulatory authority, placed Cardinal Growth into restricted operations as that term is defined in Section 5.06(b) of the LPA.

48.     On or about May 9, 2011, SBA informed Cardinal Growth by letter that SBA had transferred it to the Office of Liquidation.  Among other things, SBA's letter also notified Cardinal Growth that Cardinal Growth had been placed in Restricted Operations effective

February 21, 2011. SBA's letter also notified Cardinal Growth that in accordance with Section 107.1820(f) of SBA's regulations, Cardinal Growth was required to have all of its commitments from investors funded at the earliest time permitted in accordance with Cardinal Growth's articles.

49.     As a consequence of SBA's subjecting Cardinal Growth to restricted operations, as that term is defined in Section 5.06(b) of the LPA and as identified by SBA to Cardinal Growth in its letter dated May 9, 2011, Defendant McInerney and all other Private Limited Partners were required to contribute any amount of their respective capital commitments to the extent not previously contributed.

50.     In order to ensure that all Private Limited Partners paid their full capital commitment in accordance with the LPA, the records of Cardinal Growth reflect that its General Partner issued unfunded capital commitment demand letters to all Private Limited Partners, dated April 11, 2011.

51.     To further ensure that Defendant McInerney paid his full capital commitment, the Receiver issued unfunded capital commitment demand letters to him on September 22, 2011 and October 1, 2012, demanding payment in the amount of $245,000.00 (two hundred forty-five thousand dollars) from Defendant McInerney. Those demand letters included the imposition of penalty interest at the rate of 15% as allowed by Section 5.11 of the LPA. True and correct copies of those demand letters are attached as **Exhibits 9** and **10**, respectively.

52.     Defendant McInerney is in default of his obligation to pay to Cardinal Growth the remaining $245,000 of his unfunded capital commitment and also owes interest at an annual amount of 15% that as of June 1, 2016 had accrued to a total of $172,622.92, with additional per diem interest continuing to accrue at the rate of $102.08 per day on and after June 2, 2016.

53.     Despite the demands referenced in the immediately preceding Paragraph,

Defendant McInerney has not fully paid his capital commitment to the Receiver.

54.     Defendant McInerney has breached the LPA by failing to pay to Cardinal Growth the entire amount he agreed to pay under the LPA.

55.     As a direct and proximate result of Defendant McInerney's breach of the LPA, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant McInerney, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the defendant Private Limited Partner, Joseph McInerney, for his unfunded capital commitment of $245,000.00 (two hundred fifty-five thousand dollars) pursuant to the capital call notice and demand letters, plus interest under Section 5.11 of the LPA at an annual rate equal to fifteen percent (15%) on the principal amount ($245,000) due on October 14, 2011 at a per diem rate of interest of $102.08 on and after October 15, 2011 through the date of entry of judgment, plus post-judgment interest allowed by law, together with costs, attorney's fees, and such other relief as this Court deems just and proper under the circumstances.

## COUNT II:
## BREACH OF CONTRACT
### (Defendant McInerney's failure to pay General Partner's capital commitment)

56.     The Receiver incorporates by reference Paragraphs 1 through 55, above, as though fully set forth herein.

57.     In addition to its capacity as the general partner of Cardinal Growth, CGLLC held a limited partnership interest in Cardinal Growth through its own capital commitment of $340,000.  CGLLC's $340,000 capital commitment is identified on CGLLC's signature page to the LPA found in *Exhibit 4* at Bates number C0157762.

58.     In capital certificates found in the books and records of Cardinal Growth and as

-11-

submitted to SBA, Defendant McInerney made the affirmative representation that he was personally obligated to pay $42,500 of CGLLC's obligation to make capital contributions. Attached as **Exhibit 11** is a true and correct copy of one of those capital certificates, dated June 24, 2010. Defendant McInerney signed that capital certificate in his role as a principal of Cardinal Growth.  Paragraph 15 of that capital certificate contains, among other things, an acknowledgement that it was made subject to potential criminal and civil penalties.

59.     Defendant McInerney personally bound himself to pay at least $42,500 of the amount owed by CGLLC to Cardinal Growth in the event CGLLC failed to honor its full commitment.

60.     The books and records of Cardinal Growth reflect the amount that each partner actually paid toward its capital contribution commitment.

61.     The books and records of Cardinal Growth show that CGLLC has not made the full capital contribution of the $42,500 which CGLLC agreed to make to Cardinal Growth and which Defendant McInerney personally obligated himself to pay in the event CGLLC did not pay that amount in full.

62.     The books and records of Cardinal Growth show that no one else has paid in full the capital contribution of $42,500 which CGLLC agreed to make to Cardinal Growth and which Defendant McInerney personally obligated himself to pay in the event CGLLC did not pay that amount in full.

63.     The books and records of Cardinal Growth show that, as to Cardinal Growth, CGLLC has an unfunded capital commitment amount of $42,500.00 (forty-two thousand five hundred dollars).

64.     Because Defendant McInerney personally bound himself to pay $42,500 of the capital contribution which CGLLC agreed to make to Cardinal Growth, the Receiver issued

-12-

unfunded capital commitment demand letters, dated September 22, 2011 and October 1, 2012, demanding payment of $42,500 from Defendant McInerney for the amount owed by CGLLC, as shown by **Exhibits 12** and **13**.

65.     Defendant McInerney is in default of his obligation to pay to Cardinal Growth the remaining $42,500 of CGLLC's unfunded capital commitment and also owes interest at an annual amount of 15% that as of June 1, 2016 had accrued to a total of $29,944.79, with additional per diem interest continuing to accrue at the rate of $17.71 per day on and after June 2, 2016.

66.     Despite the Demands referenced in the immediately preceding paragraphs, CGLLC and Defendant McInerney have not fully paid the CGLLC capital commitment to the Receiver.

67.     Defendant McInerney has breached his personal obligation owed to Cardinal Growth to pay $42,500 of CGLLC's unfunded commitment by failing to pay to Cardinal Growth the entire amount he agreed to pay under the LPA and Cardinal Growth's capital certificates.

68.     As a direct and proximate result of Defendant McInerney's breach of the LPA and his personal obligation to pay CGLLC's unfunded commitment, Cardinal Growth has suffered and continues to suffer serious injury, including, but not necessarily limited to, the loss of monies owed by Defendant McInerney, lost interest on the money, and such other damages as may be hereafter discovered.

WHEREFORE, Plaintiff demands judgment against the Defendant McInerney, for his personal obligation to pay CGLLC's unfunded capital commitment of $42,500 (forty-two thousand five hundred dollars) pursuant to the capital call notices and demand letters, plus prejudgment interest allowable by law, which under Section 5.11 of the LPA is at an annual rate equal to fifteen percent (15%) on the principal amount ($42,500) due on October 14, 2011 at a

per diem rate of interest of $17.71 on and after October 15, 2011 through entry of judgment, plus

post-judgment interest allowed by law, together with costs, attorney's fees, and such other relief

as this Court deems just and proper under the circumstances.


By:   */s/ Arlene P. Messinger*
      Arlene P. Messinger
      Office of General Counsel
      U.S. Small Business Administration
      409 Third Street, S.W., Seventh Floor
      Washington, D.C. 20416
      (202) 205-6857


By:   */s/ Thomas W. Rigby*
      Thomas W. Rigby
      Office of General Counsel
      U.S. Small Business Administration
      409 Third Street, S.W., Seventh Floor
      Washington, D.C. 20416
      (202) 6191610


By:   */s/ Thomas A. Smith*
      Thomas A. Smith
      SENAK KEEGAN GLEASON
      SMITH & MICHAUD, LTD.
      621 S. Plymouth Court, Suite 100
      Chicago, IL 60605
      (312) 214-1400

      *Attorneys for the U.S. Small Business*
      *Administration, as Receiver for*
      *Cardinal Growth, L.P.*